UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| VICKIE O'BANNON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:23-cv-00086-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| MARSHALL FORD, INC., *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendants. | ) | **ORDER** |

*** *** *** ***

Ms. O'Bannon states that her ex-boyfriend fraudulently purchased a vehicle from Marshall Ford in her name. Because Ms. O'Bannon has standing to sue RMM Holdings (Marshall Ford's alleged owner), its Motion to Dismiss or to Transfer **[R. 16]** is **DENIED**.

**I**

Vicki O'Bannon and Kevin Christman dated for five years.[1] [R. 12 at 4.] About four years into their relationship, Mr. Christman allegedly fraudulently purchased a vehicle in Ms. O'Bannon's name. *Id.* Christman bought the vehicle from Marshall Ford in Carrolton, Kentucky. *Id.* at 2, 4. By forging O'Bannon's signature and personal information, Christman obtained financing for the vehicle through Huntington National Bank. *Id.* at 4. Both Huntington and Marshall Ford allegedly accessed and/or disseminated O'Bannon's credit report without her permission. *Id.* at 5–9. According to Ms. O'Bannon, Marshall Ford is owned by RMM Holdings Inc., d/b/a Marshall Auto Group. *Id.* at 2.

---

[1] The facts recounted here are taken from the Plaintiff's Amended Complaint. [R. 12.]

Plaintiff O'Bannon brings claims against RMM Holdings, Marshall Ford, and Huntington Bank under the Fair Credit Reporting Act and the Kentucky Consumer Protection Act. *See generally id.* This Court granted Marshall Ford and Huntington's Motion for Leave to file a Third Party Complaint against Kevin Christman. [R. 29.] Now, Defendant RMM Holdings moves to dismiss on the grounds that (1) O'Bannon lacks standing and (2) venue is improper. [R. 16-1.]

**II**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiffs' complaint. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, a court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555).

**A**

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation

marks and citation omitted). "The doctrine of [Article III] standing aids us in defining these limits." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). To establish standing, a plaintiff must show that "(1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the defendant's alleged wrongdoing; and (3) that the injury can likely be redressed." *Levy*, 854 F.3d at 857. Courts assessing standing "look only to 'the facts existing when the complaint is filed.'" *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 390 (6th Cir. 2022) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 569 n.4 (1992)).

Although RMM's Motion is brought pursuant to Rule 12(b)(6), standing is a jurisdictional issue appropriately addressed under 12(b)(1). *See Levy*, 854 F.3d at 857 ("Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). "This Court therefore construes the challenge for lack of subject matter jurisdiction under Rule 12(b)(1), rather than Rule 12(b)(6)." *Attitude Wellness, LLC v. Vill. of Pinckney*, 606 F. Supp. 3d 624, 636 n.3 (E.D. Mich. 2022).

A motion to dismiss under Rule 12(b)(1) challenges the Court's power to hear the case before it. When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

1

As a threshold matter, RMM Holdings attaches a variety of contract documents that list Marshall Ford as the dealer and/or seller. [*See, e.g.*, R. 16-12 (Bill of Sale).] Plaintiff O'Bannon also attaches the relevant purchase agreement to her Amended Complaint. [R. 12-1.]

Generally, a district court should not consider matters outside the pleadings on 12(b)(6) review. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) ("If a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion."). However, "[i]n considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, a district court may consider factual matters outside the pleadings and resolve factual disputes." *Anestis v. United States*, 749 F.3d 520, 524 (6th Cir. 2014); *see Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).[2] Accordingly, in assessing standing, the Court will consider the Purchase Agreement attached to Plaintiff's Amended Complaint (a part of the pleadings properly considered in any case), as well as the documents appended to Defendant's Motion to Dismiss.

**2**

According to RMM Holdings, O'Bannon lacks standing to sue RMM because (1) RMM did not cause her injury and (2) her injury is not redressable by a ruling against RMM.[3] [R. 16-1 at 4–5.] The thrust of RMM's standing argument is that Marshall Ford (*not* RMM) participated in the vehicle sale and related accessing of Ms. O'Bannon's information. *Id.* Ms. O'Bannon disagrees, asserting that dismissal without discovery would be premature. [*See* R. 26 at 4 ("At this stage of the litigation, the difference between Marshall Auto Group and Marshall Ford is a distinction without a difference and until discovery proves otherwise, RMM Holdings Inc. d/b/a

---

[2] The Sixth Circuit has explained that there are two types of 12(b)(1) challenges to subject matter jurisdiction: a facial attack and a factual attack. *Ohio Nat. Life Ins. Co.*, 922 F.2d at 325. While the former challenges the sufficiency of a pleading, the latter may require the court to weigh evidence without presuming the truth of the allegations in the complaint. *Id.* Because RMM Holdings brings its jurisdictional challenge pursuant to 12(b)(6), it does not clarify whether it asserts a facial or factual attack. Given the variety of documents provided by RMM, the Court will construe the Motion as a factual attack. But ultimately the Court would reach the same conclusion regardless.
[3] RMM concedes that Ms. O'Bannon alleges an injury in fact. [R. 16-1 at 4.]

Marshall Auto Group cannot be dismissed from this action.").] She further notes that the Purchase Agreement lists Marshall Auto Group at the top of the contract while providing its phone number, address, and website as the point of contact. [R. 12-1.]

The Court agrees with Ms. O'Bannon. First, there is no dispute that she alleges an injury in fact. Further, she states that RMM Holdings d/b/a Marshall Auto Group owns Marshall Ford. [R. 12 at 2]; [*see also* R. 16-4 (Marshall Ford Articles of Incorporation) (establishing RMM Holdings as the incorporator of Marshall Ford).] Marshall Auto Group and its contact information appear prominently on the purchase agreement (incidentally, the purchase agreement appears to provide the addresses for both Marshall Ford and RMM Holdings in the top right corner). [R. 12-1; R. 16-3; R. 16-4.] Moreover, the fact that Marshall Auto Group is not listed on other contract documents does not change the analysis. *See also Roethke v. Sanger*, 68 S.W.3d 352, 363 (Ky. 2001) ("One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."). Of course, discovery may ultimately reveal that RMM Holdings is an improper party. But at this stage, Ms. O'Bannon is entitled to proceed to discovery to determine whether that's the case.

**B**

Finally, RMM requests that this action be transferred to the Covington Division of the Eastern District. [R. 16-1 at 5–7.] The Court will deny the request.

**1**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or

5

to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations and quotation marks omitted).

District courts have discretion in determining whether a matter should be transferred to another venue. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.") (internal quotation marks omitted). In the Sixth Circuit, courts analyzing motions to transfer generally consider nine factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Antony v. Buena Vista Books, Inc.*, No. 18-205-DLB-CJS, 2020 WL 5995590, at *2 (E.D. Ky. Oct. 1, 2020); *see also Bell v. Jefferson*, No. 5:18-CV-032-CHB, 2019 WL 4017241, at *8 (E.D. Ky. Aug. 26, 2019); *Taylor v. Carnival Corp.*, No. 4:08-cv-6, 2008 WL 4646147, at *4 (E.D. Tenn. Oct. 17, 2008); *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006). "The moving party bears the burden of establishing that the balance of relevant factors weighs in favor of transfer." *Gantt v. Reliance Standard Life Ins. Co.*, 646 F. Supp. 3d 870, 874 (W.D. Ky. 2022).

But before it considers these factors, a Court must first determine whether the case could have been brought in the transferee venue. *Antony*, 2020 WL 5995590, at *2 n.2 (citing

6

*Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)). Venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2).

### 2

For starters, this case could have been filed in Covington. A substantial portion of the underlying events occurred in Carrollton, Kentucky, which is located in the Eastern District. Both Frankfort and Covington are within the Eastern District. Accordingly, the Court must next consider the nine factors.

RMM Holdings has its principal place of business in Dry Ridge, Kentucky. [R. 16-1 at 6.] Marshall Ford is located in Carrollton, Kentucky. *Id.* And Defendant Huntington is located in Columbus, Ohio. *Id.* Defendant RMM advises that the distance from Carrollton to Frankfort is roughly the same as the distance from Carrollton to Covington. *Id.* Nonetheless, it states that travelling to Covington would be cheaper for the parties and their lawyers. *Id.* Although RMM does not discuss any specific experts, it generally predicts that its experts will be travelling from Cincinnati. *Id.*

These facts and predictions are insufficient to support a transfer.[4] The operative facts occurred in this district: Plaintiff was entitled to file in either Frankfort or Covington. Carrollton is roughly equidistant from both Covington and Frankfort. Thus, accessing proof and evidence in either forum will presumably require about the same level of effort. Further, the Defendant's prediction about its expert witnesses being from Cincinnati appears speculative. Hence, the

---

[4] Ordinarily, there is a "strong presumption in favor of the plaintiff's choice of forum[.]" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *see also United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887 (N.D. Ohio 1999) ("Plaintiff's choice of forum should be given great or substantial weight when considering whether to transfer a case under § 1404(a)."). However, Ms. O'Bannon's choice of forum is afforded less deference here because she does not reside in the Eastern District of Kentucky. *See Means v. U.S. Conf. of Cath. Bishops*, 836 F.3d 643, 651 (6th Cir. 2016) ("[W]here the plaintiff does not reside in the chosen forum[,] courts assign less weight to the plaintiff's choice.").

transfer request is premature.  However, the Court is happy to entertain a later motion to transfer if concrete information becomes available or upon consent of the parties.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant's Request to Dismiss RMM Holdings as a Defendant **[R. 16]** is **DENIED;** and

2. Defendant's Request to Transfer **[R. 16]** is **DENIED without prejudice**.

This the 4th day of September, 2024.

Gregory F. Van Tatenhove
United States District Judge